STATE OF NORTH CAROLINA v. WILLIAM FOWLER

No. 7412SC26

(Filed 19 June 1974)

1. Animals § 7— cruelty to animal — intent required

To be punishable as a violation of G.S. 14-360, the cruelty to animals statute, defendant's act must be wilful, that is, without just cause, excuse, or justification; therefore, the trial court should have instructed the jury that if it believed the defendant inflicted punishment on his animal in a good faith effort to train him, it should return a verdict of not guilty.

2. Animals § 7— cruelty to animal — exclusion of expert testimony error

In a prosecution under G.S. 14-360 for cruelty to an animal, the trial court erred in excluding testimony of witnesses that defendant's actions involved recognized methods of training dogs, since the qualifications of the witnesses showed that they were experts in the field of dog training.

3. Animals § 7— cruelty to animal — sufficiency of evidence

In a prosecution for cruelty to an animal, defendant was not entitled to nonsuit since the jury was not required to believe his testimony that he held his dog's head in a water-filled hole in an attempt to break the dog of his habit of digging holes in the yard, but could have believed that such action was intended only to torture the dog.

ON *certiorari* to review trial before *Braswell, Judge,* 26 February 1973 Session of CUMBERLAND County Superior Court. Argued in the Court of Appeals 19 February 1974.

The defendant was charged in a warrant alleging that he did "unlawfully and willfully and maliciously, cruelly and needlessly beat, torture" a useful animal in violation of G.S. 14-360, a misdemeanor. He was convicted in District Court and given a suspended sentence and fined. An appeal was entered, and trial de novo was held in Superior Court. The defendant was found guilty as charged, and an active sentence was pronounced thereon.

The State's evidence consisted of the testimony of two neighbors of the defendant. Lucille Holleman (Holleman) testified that she lived next door to the defendant. On 16 October 1972, she observed William Fowler beating his dog and tying it up. She called her neighbor, Ingeborg Jenkins (Jenkins), to come see what was happening. From her bedroom she could hear the dog hollering and could see the defendant tying it up. The defendant's wife came out into the defendant's backyard and filled a hole in the ground with water from a hose. Holleman observed the defendant place the dog in the water-filled hole and submerge its head. The defendant would hold the dog's head under for some period of time and then bring the head up. He repeated this process for about 15 to 20 minutes. During this time the defendant's wife kept the hole filled with water. Following this, they untied the dog, hit it once, kicked it once, and tied it to a pole near the water-filled hole.

On cross-examination she testified that she knew that the defendant and his wife were training the dogs. While she did not approve of the method employed, she stated that they loved their dogs very much and looked after them "just about the way some people look after their children."

Jenkins testified that she lived next door to Holleman on the opposite side from the defendant's house. Holleman called her to come to the bedroom window to see what the defendant was doing with his dog. Her testimony was substantially the same as that of Holleman concerning what they witnessed in the defendant's backyard.

The defendant's evidence tended to show that he and his wife were professional dog trainers. The dog involved in the incident in question was a young German shepherd named Ike.

Ike had been digging holes in the backyard, and the Fowlers had attempted to stop him from doing this. At first, several less severe measures were tried in an effort to break Ike from digging holes in the yard. All of these methods were unsuccessful. Finally, the defendant used the method described by the prosecuting witnesses. The dog was bound so that he could not cause himself injury by thrashing around, and his mouth was tied closed to prevent him from strangling. The defendant's wife timed the events with a stop watch, and the dog's head was held under exactly forty-five seconds. The dog was submerged twice. When the dog began to strangle on one occasion, the defendant hit him in the chest with his fist to clear his lungs. This method was successful, and Ike was cured of digging holes in the yard.

The defendant offered further evidence, which was not admitted, to explain why he chose this method. Several more lax methods had been tried without success. The defendant would have testified that William Koehler, whom the defendant personally knew, was a famous dog trainer and has various methods of training dogs. The defendant consulted with Koehler, who suggested alternative ways of dealing with the problem. The defendant attempted to place into evidence further matters concerning the Koehler method of dog treatment, but was not allowed even to put these into the record. The defendant's wife, who attempted to qualify as an expert witness, also offered testimony concerning the Koehler method. Again, this was not allowed by the trial court. The defendant had one other witness who was, according to him, an expert in the field of dog training, but she was not allowed to testify concerning the Koehler methods. Had they been allowed to do so, they would have testified that the Humane Society approved the Koehler method.

*Attorney General Robert Morgan by Assistant Attorney General H. A. Cole, Jr., for the State.*

*Doran J. Berry for the defendant.*

CARSON, Judge.

The defendant moved for a judgment of nonsuit at the end of the State's evidence and again at the end of all the evidence. He argues that a beating inflicting for corrective or disciplinary purposes without an evil motive is not a crime, even if painful and even if excessive.

**[1]** To be punishable as a violation of G.S. 14-360, the act must first be willful. *State v. Tweedy,* 115 N.C. 704, 20 S.E. 183 (1894). Willful means more than intentional. It means without just cause, excuse, or justification. *State v. Dickens,* 215 N.C. 303, 1 S.E. 2d 837 (1939). New Hampshire, interpreting a cruelty statute similar to that of G.S. 14-360, early noted that punishment administered to an animal in an honest and good faith effort to train it is not without justification and not willful. *State v. Avery,* 44 N.H. 392 (1862). A like construction of our own statute is applicable to the instant situation. The jury, therefore, should have been instructed that if it believed the defendant inflicted the punishment on his animal in a good faith effort to train him, it should return a verdict of not guilty.

**[2]** Since the intent of the defendant was an essential element to determine willfulness, the trial court committed error in not allowing the defendant to testify as to the Koehler methods of training animals. It was likewise error to refuse to allow the other witnesses of the defendant to give similar testimony. An examination of the qualifications of the witnesses shows that they should have been allowed to testify as experts in the field of dog training.

**[3]** It does not follow that the defendant was entitled to a nonsuit at the conclusion of the State's evidence and at the conclusion of all the evidence. The jury was not required to believe that the defendant administered the disciplinary measures in an effort to train the animal. The same act committed against the dog for the purpose of torturing it would be within the purview of the statute. However, the jury should have been instructed that if it believed the defendant's evidence, that the punishment was administered for a disciplinary purpose, it should return a verdict of not guilty.

New trial.

Chief Judge BROCK and Judge MORRIS concur.