STATE OF NORTH CAROLINA v. MARY COBLE

No. COA03-185

(Filed 16 March 2004)

**1. Animals— cruelty—sufficiency of evidence**

There was sufficient evidence to submit a charge of misdemeanor cruelty to animals to the jury where two dogs in defendant's yard had been tied but not fed or watered, and one had died. Defendant's assertion that the dogs should have been fed by a relative is for the jury to weigh and is not grounds for dismissal.

**2. Appeal and Error— argument on appeal—argument on different grounds from trial—not considered**

An argument was not considered on appeal where defendant contended that an animal control officer's dismissal was relevant to his credibility and should have been admitted in defendant's animal cruelty prosecution, but defendant's counsel had expressly stated at trial that the evidence was not offered to attack the officer's credibility.

**3. Criminal Law— instructions—admissions**

The trial court did not err by instructing the jury that it could consider admissions made by the defendant in an animal abuse prosecution.

Appeal by defendant from judgment entered 4 September 2002 by Judge William Z. Wood, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 14 January 2004.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Angel E. Gray, for the State.*

*Kay S. Murray for defendant-appellant.*

HUNTER, Judge.

Mary Coble ("defendant") appeals from a judgment dated 4 September 2002 entered consistent with a jury verdict finding her guilty of misdemeanor cruelty to animals. As a result of her conviction, defendant was sentenced to a jail term of forty-five days. We conclude there was no error in defendant's trial.

The State's evidence presented at trial beginning on 3 September 2002 tends to show that on 23 May 2001 Scott Townsend ("Townsend"), a deputy with the animal control department, responded to a report of cruelty to animals at defendant's address. From a vantage point at a neighboring house, Townsend looked into defendant's backyard and observed two animals. One of the animals was an emaciated tan and white chow mix dog tied to a tree with a broken dog house nearby. Townsend was unable to identify the other animal. He observed that neither of the animals had any food or water. Townsend then went to defendant's house and informed her of the poor conditions of the animals. Defendant and Townsend went to the backyard and walked over to the unidentified animal. Townsend saw that it was a deceased apricot poodle. Townsend asked defendant if she had fed the dogs, and defendant replied that she worked twenty hours a day and did not have time to feed the dogs, asserting that they were supposed to be fed by a relative who did not live in the house. Defendant did not know how long the dead poodle had been tied to the fence, but did not act surprised when it was shown to her. Townsend testified that defendant told him she believed the dogs were skinny because she had given them too much worming medicine. Townsend also stated that he did not observe any other adults around defendant's house.

On cross-examination, Townsend admitted that he no longer worked for the animal control department. Defendant, however, was not permitted to examine Townsend as to the circumstances surrounding his dismissal. In an offer of proof, Townsend stated that his employment was terminated on 5 July 2002, apparently as a result of a separate investigation in which the copy of a warrant he had issued did not match the original. Defendant's attorney informed the trial court that this proof was being offered to show "the quality or the nature of the investigative environment," and was not being offered to "challenge [Townsend's] credibility."

Scott Benard, a veterinarian at the Forsyth Emergency Clinic testified that he examined the dogs when they were brought in. The

chow mix was very emaciated and dehydrated, showing signs of malnutrition, and likely had parasitic problems. The dead poodle was also severely emaciated. Severe rigor mortis had set in and there were signs of early decay of the poodle's body, which included the existence of fly eggs in the poodle's skin.

Defendant testified on her own behalf that she worked sixteen to twenty hours a day and was not responsible for feeding the dogs as they belonged to relatives. She further testified that she told Townsend that her relatives had given the dogs too much worming medicine. During its charge to the jury, the trial court instructed it that there was evidence tending to show that defendant had admitted a fact or facts related to the crime charged, and if the jury found that an admission had been made they were to consider whether it was truthful and the weight to be given to it.

The issues are whether: (I) there is sufficient evidence defendant intentionally deprived the dogs of necessary sustenance to withstand a motion to dismiss; (II) the trial court erred in excluding evidence of the circumstances surrounding Townsend's dismissal; and (III) there was evidence to support an instruction on admissions by defendant.

I.

**[1]** Defendant first argues there was insufficient evidence that defendant intentionally starved the dogs, as there was evidence that defendant was not responsible for feeding them. We disagree.

"When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 66, 296 S.E.2d at 652 (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). In deciding a motion to dismiss, the evidence should be viewed in the light most favorable to the State. *See id.* at 67, 296 S.E.2d at 652. "In so doing, the State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence; contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *Id.* at 67, 296 S.E.2d at 653. "The [trial] court is to consider all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State.

The defendant's evidence, unless favorable to the State, is not to be taken into consideration." *Id.* (citations omitted).

In order to prove the offense of misdemeanor cruelty to animals, the State is required to present substantial evidence that a defendant did "intentionally overdrive, overload, wound, injure, torment, kill, or deprive of necessary sustenance, or cause or procure to be over-driven, overloaded, wounded, injured, tormented, killed, or deprived of necessary sustenance, any animal[.]" N.C. Gen. Stat. § 14-360(a) (2003). Under the cruelty to animals statute, "intentionally" refers to an act or omission "committed knowingly and without justifiable excuse." N.C. Gen. Stat. § 14-360(c). Thus in this case, the State was required to present substantial evidence that defendant knowingly, and without justifiable excuse, deprived the dogs, or caused them to be deprived, of necessary sustenance. "Knowledge or intent 'is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred.' " *Semones v. Southern Bell Telephone & Telegraph Co.*, 106 N.C. App. 334, 340, 416 S.E.2d 909, 913 (1992) (quoting *State v. Bell*, 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974)).

The evidence taken in the light most favorable to the State shows that defendant knew the dogs were being kept, with her consent, at her home and in her backyard. The dogs were tied up with no shelter, food, or water. Both dogs had been allowed to become emaciated and the dead poodle had been left, still tied up, to the point of decay. Defendant did not act surprised to see the dead poodle and admitted that she did not have time to feed the dogs and no other adults were observed around the home. Townsend also testified that his notes from the investigation showed defendant admitted to having given the dogs too much worming medicine.

This is all evidence that both dogs had been neglected for a substantial and inexcusable amount of time, such that it precludes any possibility of the failure to care for the animals being just temporary or a minor oversight. It is also evidence tending to show that defendant knew the dogs were at her house, as well as the condition they were in, and did not feed or water them. Moreover, because the dogs were tied up, they were unable even to provide for their own sustenance, thereby leaving them at the mercy of human care and serving to magnify their predicament. The evidence that defendant may have given the dogs too much worming medicine tends to show that defendant was not only aware of the dogs kept at her home but actually had an active role in their care. We conclude this evidence, taken

in the light most favorable to the State, constitutes substantial circumstantial evidence that defendant, who knew the dogs were kept at her home and did not feed them, knowingly deprived the dogs of necessary sustenance. Thus, there was sufficient evidence that defendant acted intentionally under the cruelty to animals statute.

Defendant's assertions, both during Townsend's investigation and in her testimony at trial, that she thought the dogs were fed by a relative who did not live in the house is not grounds for dismissal. *See State v. Fowler*, 22 N.C. App. 144, 147, 205 S.E.2d 749, 751 (1974) (evidence of a defendant's excuse for the killing of a dog, while tending to negate the required mental state, did not entitle the defendant to a nonsuit as the jury was not required to believe that explanation). Instead, evidence of defendant's excuse is for the jury to weigh and consider in reaching its verdict. Accordingly, there was sufficient evidence upon which to submit the charge of misdemeanor cruelty to animals to the jury.

## II.

**[2]** Defendant next contends that it was error to exclude evidence of the circumstances surrounding the termination of Townsend's employment, arguing it was relevant to call into question Townsend's credibility. This ignores the fact that at trial, defendant, through counsel, expressly and unambiguously stated that this evidence was *not* being offered for the purpose of attacking Townsend's credibility. We will not now allow defendant to "swap horses" on appeal. *See State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (noting our Courts do not permit a new theory, not argued at trial, to be asserted on appeal so as to allow a party to swap horses in order to get a better mount). As such, defendant has waived this argument on appeal. *See id.*

## III.

**[3]** Defendant finally argues it was error to instruct the jury that they may consider evidence of admissions made by defendant. We disagree. "It is well settled that instructions are not improper if based upon 'some reasonable view of the evidence.'" *State v. Garner*, 330 N.C. 273, 295, 410 S.E.2d 861, 874 (1991) (quoting *State v. Buchanan*, 287 N.C. 408, 421, 215 S.E.2d 80, 88 (1975)).

In this case a reasonable view of the evidence shows that defendant admitted to Townsend that she did not feed the dogs and had given the dogs too much worming medicine. As such, the instruction

on admissions made by defendant was based upon a reasonable view of the evidence presented. Accordingly, the trial court did not err in giving the instruction on admissions to the jury.

No error.

Judges McGEE and GEER concur.