STATE OF NORTH CAROLINA v. TAURICE MARQUESE CRISP

No. COA96-395

(Filed 15 April 1997)

**1. Assault and Battery § 16 (NCI4th)— bill of indictment— assault—"serious injury"—no need of exact language**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, it was not necessary for the bill of

indictment to track the exact language of N.C.G.S. § 14-32(a) by using the term "serious injury" where the indictment alleged that the victim received a gunshot wound to the left arm which required medical treatment and hospitalization.

**Am Jur 2d, Assault and Battery §§ 90, 91.**

2. **Assault and Battery § 116 (NCI4th)— assault—deadly weapon—serious injury —lesser included offense**

In a prosecution for assault with a deadly weapon with the intent to kill inflicting serious injury, the trial court did not err by instructing the jury that the victim's injury was serious and by refusing to instruct the jury on the lesser included offense of assault with a deadly weapon because reasonable minds could not differ as to the seriousness of the victim's injuries where the evidence showed that defendant shot the victim; the bullet entered the victim's leg; the victim's leg went numb and then begin burning and throbbing; the victim needed assistance to leave the building; and the victim required treatment at a hospital.

**Am Jur 2d, Trial §§ 1427 et seq.**

**Propriety of lesser-included-offense charge to jury in federal assault prosecution. 103 ALR Fed. 880.**

3. **Criminal Law § 1095 (NCI4th Rev.)—Structured Sentencing Act—aggravating factor—permanent and debilitating injury**

The evidence supported the trial court's finding as an aggravating factor for assault with a deadly weapon inflicting serious injury that the victim suffered a serious injury that was permanent and debilitating where the evidence at trial indicated that the victim had diminished strength in his arm after he was shot in the arm by defendant, the bullet disintegrated the bone, the arm bone was removed, and reconstructive surgery transferred bone from his hip to his arm.

**Am Jur 2d, Criminal Law §§ 525 et seq.**

**Sufficiency of bodily injury to support charge of aggravated assault. 5 ALR5th 243.**

**4. Criminal Law § 1095 (NCI4th Rev.)— Structured Sentencing Act—permanent and debilitating injury—same evidence not used to prove element of offense**

The trial court did not use the same evidence to prove an element of each offense, assault with a deadly weapon with intent to kill inflicting serious injury, and the aggravating factor that each victim suffered a serious injury that was permanent and debilitating where the gunshot wounds suffered by the victims resulted in serious injuries at the time they were inflicted, wholly apart from the long-term or extended effects that arose from each victim's injuries. N.C.G.S. § 15A-1340.16(d)

**Am Jur 2d, Criminal Law §§ 525 et seq.**

**Sufficiency of bodily injury to support charge of aggravated assault. 5 ALR5th 243.**

**5. Criminal Law § 1095 (NCI4th Rev.)— Structured Sentencing Act—aggravating factor—weapon hazardous to multiple lives—semi-automatic gun**

There was sufficient evidence to support the trial court's finding of the existence of the aggravating factor that defendant used a weapon which normally would be hazardous to the lives of more than one person where the evidence at trial supported the inference that defendant assaulted his victims with a semi-automatic pistol.

**Am Jur 2d, Criminal Law §§ 525 et seq.**

**Sufficiency of bodily injury to support charge of aggravated assault. 5 ALR5th 243.**

**6. Criminal Law § 1095 (NCI4th Rev.)— Structured Sentencing Act—aggravated assault—aggravating factor—weapon hazardous to multiple lives**

It was not error for the trial court to find the existence of the aggravating factor that defendant used an automatic weapon normally hazardous to the lives of more than one person after defendant had been convicted of assault with a deadly weapon with intent to kill inflicting serious injury where the employment of a weapon normally hazardous to others was not an essential element of the assault charge.

**Am Jur 2d, Criminal Law §§ 525 et seq.**

STATE v. CRISP

[126 N.C. App. 30 (1997)]

**Sufficiency of bodily injury to support charge of aggravated assault. 5 ALR5th 243.**

**7. Criminal Law § 1097 (NCI4th Rev.)— Structured Sentencing Act—mitigating factor—condition reducing culpability—failure of court to find**

The trial court did not err by failing to find as a mitigating sentencing factor for aggravated assaults that defendant was suffering from a mental condition that reduced his culpability where a psychologist testified that defendant had an IQ of 77, lower than average reading, spelling and math skills, and symptoms of increased suspicion and paranoia; the psychologist further stated that these were characteristics of a person with "borderline mental disorder" which is "a mental illness that describes someone who is immature and unpredictable"; and the trial court expressed doubts about the credibility and substance of this evidence. N.C.G.S. § 15A-1340.16(e)(3).

**Am Jur 2d, Criminal Law §§ 525 et seq.**

**Sufficiency of bodily injury to support charge of aggravated assault. 5 ALR5th 243.**

**8. Criminal Law § 1097 (NCI4th Rev.)— Structured Sentencing Act—mitigating factor—extenuating relationship—insufficient evidence**

Evidence of a prior altercation between defendant and the victim of an aggravated assault did not compel the trial court to find the mitigating factor that the relationship between defendant and the victim was otherwise extenuating. N.C.G.S. § 15A-1340.16(e)(8).

**Am Jur 2d, Criminal Law §§ 525 et seq.**

**Sufficiency of bodily injury to support charge of aggravated assault. 5 ALR5th 243.**

**9. Criminal Law § 1097 (NCI4th Rev.)— Structured Sentencing Act—mitigating factor—acceptance of responsibility for crimes—motion to suppress statement**

Defendant was not entitled to a finding of the mitigating factor that he accepted responsibility for his criminal conduct where defendant repudiated his incriminating statement to the police by moving to suppress it. N.C.G.S. § 15A-1340.16(e)(15).

**Am Jur 2d, Criminal Law §§ 525 et seq.**

STATE v. CRISP

[126 N.C. App. 30 (1997)]

Appeal by defendant from judgment entered 11 October 1995 by Judge Peter M. McHugh in Rockingham County Superior Court. Heard in the Court of Appeals 16 January 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General John A. Greenlee, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

WALKER, Judge.

On 6 March 1995, defendant was indicted on six counts of assault with a deadly weapon with intent to kill inflicting serious injury. These cases were consolidated for hearing. In case 95 CRS 2015, defendant was found guilty and sentenced to a minimum term of 108 months and a maximum term of 139 months of imprisonment. In the remaining five cases, defendant was found guilty of assault with a deadly weapon inflicting serious injury and was sentenced to: 36 to 53 months of imprisonment each in 95 CRS 2016 and 95 CRS 2019; and 29 to 44 months of imprisonment each in 95 CRS 2017, 95 CRS 2018, and 95 CRS 2020, for a total of a minimum term of 267 months and a maximum term of 377 months of imprisonment with the sentences to run consecutively.

The evidence presented tended to show that around midnight on 18 February 1995, defendant arrived at the Kingsway Pavilion, a nightclub in Rockingham County. Defendant had on his person a nine millimeter semi-automatic pistol which was loaded to its capacity of sixteen rounds. After arriving, defendant attempted to locate Gary Blackstock among the crowd, which was estimated to be between 90 and 135 people. Defendant saw Blackstock, moved toward him and opened fire on him with the pistol. As defendant fired the pistol, he held it sideways and waved it back and forth. Defendant continued firing as he pursued Blackstock, who ran for the front door. Defendant then fled the scene, disposed of the pistol and turned himself in to the magistrate's office 48 hours later.

The bullets struck Blackstock and five other people and the bullet fragments struck walls, light fixtures and the floor. Blackstock was shot three separate times, in the left wrist, which was shattered, in the left thigh, and under the calf of his left leg. After reconstructive surgery he lost fifty percent of the function of his left wrist and thumb. Further, he had five surgeries on his left leg, including arterial

STATE v. CRISP

[126 N.C. App. 30 (1997)]

replacement and the removal of his calf muscle, and he permanently lost control of his left foot.

Greg Nordan was shot in the upper left arm, disintegrating the bone. He underwent reconstructive surgery, with bone taken from his hip to repair his arm, which was held in place with a metal plate and pins. He has retained the use of his arm, but stated that ". . . in the winter or in bad weather it will always bother me and my arm will never be right again . . . [and] . . . I am just not as strong in that arm."

Jermaine Jackson was struck in the side just above his thigh. The bullet pierced his large and small intestines, which required three surgeries and the installation of a colostomy bag. He also suffered nerve damage which had not healed.

Preston Doug Clark suffered a gunshot wound to his right jaw, which shattered both his right and left jaws. He was hospitalized for two weeks and continued to suffer recurrent pain from the injury at the time of trial.

Kevin Richardson was hit by a single bullet that entered his spine, leaving him permanently paralyzed from the mid-chest down. The bullet shattered inside his body causing injuries to his lungs and left hand. At the time of trial, Richardson was undergoing therapy twice a week and taking medication.

Jonathan Woodbury was shot once in the leg where the bullet passed through his calf leaving his leg numb. He experienced a burning and throbbing sensation and was treated at the hospital for his injury.

When defendant turned himself in to the magistrate's office, he made a voluntary statement admitting the shootings. In his statement, defendant also recounted that he had been stabbed in the abdomen by Gary Blackstock during an altercation in January 1995 at the Kingsway Pavilion. After this stabbing, defendant was hospitalized for three days. The incident was reported to the Eden Police Department by hospital personnel, but defendant refused to identify his attacker and the investigation was closed. Blackstock confirmed that he had "cut" defendant during the dispute at the Kingsway Pavilion in January prior to the shooting.

John Frank Warner, III, a clinical psychologist, testifying on defendant's behalf, stated that defendant had an IQ of 77, which placed him in a "borderline range of intelligence," and that he exhib-

ited reading skills at an eighth grade level, spelling skills at a fifth grade level, and math skills at a fourth grade level. Warner also testified that defendant was suffering from "borderline mental disorder, which is a mental illness that describes someone who is immature and unpredictable." Further, since defendant was reported to have been intoxicated at the time of the shootings, Warner believed defendant was impaired as a result of the alcohol and of his emotional immaturity. Warner also described defendant as experiencing generally heightened feelings of fear and apprehension resulting from the January stabbing incident.

[1] Defendant first asserts that his conviction in the Nordan case must be vacated because the bill of indictment did not allege the essential element of "serious injury." First, we note the Nordan indictment was entitled "Assault With a Deadly Weapon with Intent to Kill Inflicting Serious Injury . . . Offense in Violation of G.S. § 14-32(a)." Further, the indictment alleged that defendant "did assault Gregory Wayne Nordan with a 9mm pistol, a firearm, a deadly weapon by shooting him in the left arm, requiring medical attention. The assault was intended to kill and resulted in the victim to be [sic] hospitalized."

"A charge in a bill of indictment must be complete in itself and contain all of the material allegations which constitute the offense." *State v. Guffey*, 265 N.C. 331, 333, 144 S.E.2d 14, 16 (1965). However, this rule does not require an indictment to exactly track the statutory language setting forth a particular criminal offense, so long as the indictment states facts which constitute every element of the crime charged. *State v. Hicks*, 86 N.C. App. 36, 40, 356 S.E.2d 595, 597 (1987). Further, our Supreme Court has stated that the term "serious injury" under N.C. Gen. Stat. § 14-32(a) means a physical or bodily injury which results from an assault with a deadly weapon, determined according to the facts of each case. *State v. James*, 321 N.C. 676, 688, 365 S.E.2d 579, 586-87 (1988) (*citing State v. Jones*, 258 N.C. 89, 128 S.E.2d 1 (1962)).

Although the indictment did not track the exact language of N.C. Gen. Stat. § 14-32(a) by using the term "serious injury," it did aver that the victim had received a gunshot wound to the left arm which required medical treatment and hospitalization. The indictment, when read as a whole, sufficiently stated facts which support every element of the crime charged and apprised defendant of the specific charge against him.

**[2]** Defendant next assigns as error the trial court's instruction that Woodbury's injury was serious and its refusal to submit the lesser included offense of assault with a deadly weapon.

A trial court may peremptorily instruct the jury on the serious injury element if "the evidence 'is not conflicting and is such that reasonable minds could not differ as to the serious nature of the injuries inflicted.'" *State v. Hedgepeth*, 330 N.C. 38, 54, 409 S.E.2d 309, 318-19 (*quoting State v. Pettiford*, 60 N.C. App. 92, 97, 298 S.E.2d 389, 392 (1982)). In *Hedgepeth*, the victim was shot through the ear, causing a wound requiring six or seven stitches to close. She bled profusely, suffered a bruise and burns, and required emergency medical treatment. At the time of trial, she still suffered a ringing in her ear. This Court determined, based on that evidence, that "reasonable minds could not differ as to the seriousness" of the physical injuries. *Id.* at 54-55, 409 S.E.2d at 319.

In this case, evidence showed that the bullet entered Woodbury's leg from the side into the top part of his calf and exited out of the bottom of the calf muscle. His leg went numb and then began burning and throbbing. Woodbury needed assistance to leave the building and was taken to the hospital for treatment. Based on this evidence, we decline to disturb the trial court's determination that Woodbury's injury was "serious" within the meaning of N.C. Gen. Stat. § 14-32(a) and that reasonable minds could not differ as to the seriousness of his injuries. Thus, the trial court was not required to submit the lesser-included offense of assault with a deadly weapon to the jury.

**[3]** In his third assignment of error, defendant states that he is entitled to a new sentencing hearing in the Nordan case because the trial court's finding of the aggravating factor that the victim suffered permanent and debilitating serious injury is not supported by the evidence.

The State bears the burden of persuasion on aggravating factors by a preponderance of the evidence. *State v. Parker*, 315 N.C. 249, 255, 337 S.E.2d 497, 500 (1985). The evidence presented at trial showed that Nordan was shot in the upper left arm, the bullet disintegrated the bone, the arm bone was removed, and reconstructive surgery transferred bone from his hip to his arm, which is held in place by a metal plate and nine screws. Further, Nordan testified that, " . . . in the winter or bad weather it will always bother me and my arm will never be right again." Moreover, the following exchange took place between Nordan and the prosecutor:

Q: And is there a permanent injury? Can you not use the arm or anything like that?

A: No, I am just not as strong in that arm.

It is clear from the exchange, that Nordan was confirming that his injured arm, while not useless, was diminished in strength. Thus, the State met its burden of supporting the aggravating factor of the victim having suffered a serious injury that is permanent and debilitating.

**[4]** Defendant next contends that he is entitled to new sentencing hearings in the Richardson and Nordan cases because the trial court erroneously used evidence necessary to prove an element of the offense to also prove the aggravating factor that each victim suffered a serious injury that was permanent and debilitating.

N.C. Gen. Stat. § 15A-1340.16(d) provides that "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation . . . ." Defendant argues that because Richardson and Nordan each suffered only one injury from the assaults (Richardson was paralyzed and Nordan's arm bone was shattered), there was no evidence relating to any permanent and debilitating serious injury with which to prove the aggravating factor other than the evidence which was necessary to prove the serious injury element of the offense. We disagree.

In *State v. Evans*, 120 N.C. App. 752, 463 S.E.2d 830 (1995), *disc. review denied*, 343 N.C. 310, 471 S.E.2d 78 (1996), this Court examined a similar issue. In *Evans*, the defendant argued that the court used the same evidence to support two aggravating factors in violation of N.C. Gen. Stat. § 15A-1340.4(a)(1). In overruling the defendant's assignment of error, this Court looked to the North Carolina Supreme Court decision in *State v. Brinson*, 337 N.C. 764, 448 S.E.2d 822 (1994) stating:

> In *State v. Brinson*, defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury. The State's evidence showed that defendant got into a confrontation with Eason, his cellmate, whereupon defendant struck Eason in the jaw and then slammed his head against the bars. Eason then heard his neck "pop" but the defendant continued to slam Eason's head on the floor. Eason was permanently paralyzed from the chest down as a result of a broken neck. The Court held that "[t]he evidence relating to the victim's broken neck, aside from evidence relating to the resulting paralysis, was sufficient to

establish the element of the crime that the defendant inflicted a 'serious injury' upon the victim." Further, the Court found that the evidence relating to the broken neck was not used in making the finding that the "injuries sustained by the victim were extremely severe and permanent;" instead, that finding rested solely on the victim's paralysis. (Citations omitted.)

*Id.* at 757, 463 S.E.2d at 833.

The same rationale that our courts applied in *Brinson* and *Evans* applies in the instant case. Here, the language of the statute, that "the serious injury inflicted upon the victim is permanent and debilitating" creates a distinction between the suffering of the victim at the time the serious injury is inflicted and any long-term or extended effects that arise due to that serious injury. The gunshot wounds suffered by Richardson and Nordan resulted in serious injuries at the time they were inflicted, wholly apart from their consequences. Richardson's paralysis and Nordan's weakness and diminished ability to use his arm were the long-term effects of these injuries. Thus, the same evidence was not used to support an element of the offense and the aggravating factor.

[5] Defendant also assigns as error the trial court's finding of an aggravating factor that defendant used a weapon or device which normally would be hazardous to the lives of more than one person. Defendant argues that there was insufficient evidence to establish that he used a semi-automatic weapon.

In his statement to the police, the defendant said he used a "9 millimeter pistol." Five eyewitnesses testified that defendant used "a black 9 millimeter." The State, without objection, offered for illustrative purposes, a 9 millimeter semi-automatic magazine fed Ruger pistol capable of holding 16 rounds of ammunition. All the witnesses who were asked, stated that this Ruger weapon was "similar to" or "looked like" the weapon used by defendant. Officer Hopper of the Eden Police Department testified that the descriptions of the weapon by the defendant and by the eyewitnesses were substantially the same. A strong inference can also be drawn from the evidence that the weapon used by defendant contained multiple rounds of ammunition which were discharged in rapid fire as would a semi-automatic weapon.

This evidence is sufficient to support a finding that the weapon used by the defendant was in fact a semi-automatic weapon. Further,

this Court in *State v. Antoine*, 117 N.C. App. 549, 551, 451 S.E.2d 368, 370, *disc. review denied*, 340 N.C. 115, 456 S.E.2d 320 (1995) held that a semi-automatic pistol "in its normal use is hazardous to the lives of more than one person and is the type of weapon contemplated by N.C. Gen. Stat. § 15A-1340.4 (a)(1)(g) (1988)." *See also, State v. Evans*, 120 N.C. App. 752, 463 S.E.2d 830 (1995), *disc. review denied*, 343 N.C. 310, 491 S.E.2d 78 (1996). This assignment of error is overruled.

**[6]** Defendant's sixth assignment of error contends that the trial court erroneously used evidence, which was necessary to prove an element of the offense, to also prove the aggravating factor that defendant used an automatic weapon normally hazardous to the lives of more than one person.

Defendant argues that because the evidence of the use of a particular weapon was used to prove an element of the assaults, the aggravating factor challenged cannot stand because it is the same weapon. However, this Court has previously addressed this issue and held that it was not error to also find an aggravating factor from the use of a weapon after a defendant has been convicted of assault under N.C. Gen. Stat. § 14-32(a). In *State v. Platt*, 85 N.C. App. 220, 228, 345 S.E.2d 332, 336, *disc. review denied*, 320 N.C. 516, 358 S.E.2d 529 (1987), this Court stated:

> [D]efendant further contends that the use of this factor to aggravate his sentences for assault with a deadly weapon with intent to kill inflicting serious injury is prohibited by G.S. § 15A-1340.4(a)(1) . . . . However, in order to prove its case, the State simply needed to show that defendant used a deadly weapon, and it did not need to show, as an essential part of its proof of the charged offenses, that defendant employed a weapon normally hazardous to the lives of more than one person. Accordingly, we hold the court did not err in finding this factor. (Citations omitted.)

The same reasoning used in *Platt* applies in this case and we find no error.

Lastly, defendant assigns as error the trial court's failure to find three statutory mitigating sentencing factors in all six cases. Defendant asserts that the trial court failed to find the following statutory mitigating factors: (1) "the defendant was suffering from a

mental or physical condition that was insufficient to constitute a defense but significantly reduced [his] culpability for the offense;" (2) "the relationship between the defendant and the victim was otherwise extenuating;" and (3) "the defendant has accepted responsibility for [his] criminal conduct." *See* N.C. Gen. Stat. § 15A-1340.16(e)(3), (8), and (15) (1996).

A sentencing judge must find a statutory mitigating sentence factor if it is supported by a preponderance of the evidence. *State v. Ahearn*, 307 N.C. 584, 596-97, 300 S.E.2d 689, 696-97 (1983). However, the defendant bears the burden of persuasion, by a preponderance of the evidence, in establishing his entitlement to statutory factors in mitigation. *State v. Bare*, 77 N.C. App. 516, 524, 335 S.E.2d 748, 752 (1985), *disc. review denied*, 315 N.C. 392, 338 S.E.2d 881 (1986).

[7] Dr. Warner testified that defendant had an IQ of 77, lower than average reading, spelling and math skills, and he also had symptoms of increased suspicion and paranoia. He further stated that these were characteristics of a person with "borderline mental disorder" which is "a mental illness that describes someone who is immature and unpredictable." Defendant contends the trial court erred in failing to find that these conditions reduced his culpability for the offenses. The trial court, in expressing its doubts about the credibility and substance of this evidence, declined to find this mitigating factor. We find no error in this determination.

[8] Defendant next argues that the prior altercation between himself and one of the victims (Gary Blackstock) created a relationship that gave rise to extenuating circumstances in mitigation of his conduct under N.C. Gen. Stat. § 15A-1340.16(e)(8). The previous history of a dispute between defendant and Blackstock was not such as would compel the trial court to find this mitigating factor, which would serve to diminish defendant's responsibility for the acts.

[9] Defendant finally argues that he accepted responsibility for his criminal conduct so as to entitle him to a finding in mitigation under N.C. Gen. Stat. § 15A-1340.16(e)(15). However, when defendant moved to suppress the incriminating statement made to the Eden Police Department, he in effect repudiated the statement and is not entitled to this statutory mitigating factor. *See State v. Ruffin*, 90 N.C. App. 705, 370 S.E.2d 275 (1988).

The trial court properly determined that defendant failed to meet his burden of persuasion on any of the three statutory mitigating factors; therefore, this assignment of error is overruled.

No error.

Judges JOHN and McGEE concur.