STATE OF NORTH CAROLINA v. BARBARA YVONNE MAUER, DEFENDANT

No. COA09-807

(Filed 16 February 2010)

**1. Animals— cruelty to animals—insufficient of evidence— "tormented" animal**

The trial court did not err in denying defendant's motion to dismiss the charge of cruelty to animals as the State presented substantial evidence that defendant "tormented" a cat, causing it unjustifiable pain or suffering, under N.C.G.S. § 14-360(c).

## 2. Damages and Remedies— restitution—insufficient evidence

In an animal cruelty prosecution, the trial court committed reversible error in ordering defendant to pay $259.25 in restitution as the restitution worksheet submitted to the trial court was insufficient to support the order. Defendant's failure to object to the trial court's entry of the award of restitution did not preclude appellate review of the issue and defendant's silence while the trial court orally entered judgment against her did not constitute a stipulation to amount of restitution.

Appeal by defendant from judgment entered 17 February 2009 by Judge James Gregory Bell in Cumberland County Superior Court. Heard in the Court of Appeals 2 December 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Joan M. Cunningham, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Emily H. Davis, for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Barbara Yvonne Mauer appeals her conviction of misdemeanor cruelty to animals, arguing primarily that the trial court erred in denying her motion to dismiss the charge for insufficient evidence. Contrary to defendant's contention, the State presented substantial evidence of the offense, and, therefore, the trial court properly denied defendant's motion. We conclude, however, that insufficient evidence was presented to support the trial court's restitution order. Consequently, we vacate that order and remand for rehearing.

### Facts

The State's evidence tended to establish the following facts at trial: At roughly 11:00 a.m. on 6 September 2007, Officer Melissa Hooks with the Cumberland County Animal Control Department responded to a complaint about the conditions in a home on Sandstone Lane in Cumberland County, North Carolina. When no one answered the door, Hooks looked around the outside of the home, noticing a "moderate" smell of rotting garbage and the smell of urine and feces. Hooks saw food and water bowls on the front step with bugs in them. In the yard, Hooks saw multiple pans of cat litter and litter bags, animal traps, animal carriers, roof tiles, hay, and over-

flowing garbage cans. She tried to enter the backyard through a gate but was unable to do so because the gate was blocked on the other side with debris. Hooks took pictures of the house and reported her investigation to her supervisor.

Animal Control obtained an inspection warrant, and the next day, Hooks, along with other Animal Control officers and Cumberland County Sheriff's deputies, returned to the residence, which they had learned was owned by defendant. Getting out of their vehicles to execute the warrant, they noticed that the smell of feces and urine became stronger as they approached the residence. When no one answered the front door, the deputies pushed open the door, although it was difficult to do so because it was blocked by feces, trash, and clothes on the inside. As the officers tried to enter the house, the smell was "overpowering," making their eyes water. The officers were unable to go inside and had to call the fire department to come and use positive pressure fans to ventilate the house. The fire department also provided Hook and other officers with breathing apparatus so that they could inspect the inside of the house.

When the animal control officers finally went inside, they saw at least 15 to 20 cats running around. The floor was covered with feces and urine and the officers could not walk around inside without stepping in it. Some of the feces were fresh, but some of it was old, with mold on it. In the front room of the house, eight to 10 cats were running around several metal cages covered with feces and fur. In the kitchen, the stove, sinks, and counter tops were covered with feces and urine. The furniture had feces on it and "leftover" food. The cats also had feces on them, and around the windows and doors were "streaks" from where, according to the animal control officers, the cats had been jumping trying to get out of the house.

Inside the house were several bags of cat food, but none of them were open. There were also litter boxes inside, most of them having been turned over. There were piles of clothes and trash on the floor in the rooms and halls and they were covered in cat hair, feces, and urine. In a back room of the house there was a feeder with fresh cat food in it. All the windows and doors in the house were shut and locked, with no access for the cats to go outside.

The officers were able to catch three of the cats before they had to leave the premises due to the expiration of the inspection warrant. Three days later, on 10 September 2007, animal control officers returned to the residence to search for more cats. The inspectors from

the county health department were there and they had condemned the house. The animal control officers saw defendant walking in and out of the house, cleaning it out. They saw several feral cats running around outside the house, but when they went inside, they found no animals.

Around the same time as the investigation at Sandstone Lane, animal control was also called out to investigate a complaint about a dead animal on Elliot Farm Road in Cumberland County. Officers Jason Seifert and Alan Canady found a dead cat in an upstairs room of the house. Inside the house, Seifert and Canady found the floors covered in two-to-three inches of feces. There was one room, above the garage, with clean carpet and no cat feces in it. A bed was in the room, with covers messed up like someone had recently slept in it. In the front yard near the driveway, they found a piece of mail with defendant's name on it.

Defendant was charged with one count of cruelty to animals. Defendant was tried and convicted in district court and defendant appealed for a trial de novo in superior court. At the close of the State's evidence in superior court, and, after electing to not present any evidence in her defense, defendant moved to dismiss the charge for insufficient evidence. The trial court denied both motions. The jury found defendant guilty and the trial court ordered a 30 day suspended sentence and 12 months probation, with no animals on her property or in her possession during her probation period. The court further ordered defendant to undergo a mental health evaluation and to pay $259.25 in restitution to animal control. Defendant gave notice of appeal in open court.

I

**[1]** Defendant first argues on appeal that the trial court should have granted her motion to dismiss the charge of cruelty to animals for lack of sufficient evidence. On appeal, the trial court's denial of a motion to dismiss for insufficient evidence is reviewed de novo. *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982). A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged and (2) defendant being the perpetrator of the offense. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). In ruling on a motion to dismiss, "the trial court is required to view the evidence in the light most favorable to the State,

making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). Contradictions and discrepancies in the evidence do not warrant dismissal, but are for the jury to resolve. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

To prove misdemeanor cruelty to animals, the State must present evidence that the defendant did "intentionally overdrive, overload, wound, injure, torment, kill, or deprive of necessary sustenance, or cause or procure to be overdriven, overloaded, wounded, injured, tormented, killed, or deprived of necessary sustenance, any animal[.]" N.C. Gen. Stat. § 14-360(a) (2007); *State v. Coble*, 163 N.C. App. 335, 338, 593 S.E.2d 109, 111 (2004). Under the statute, the term "torment" denotes "any act, omission, or neglect causing or permitting unjustifiable pain, suffering, or death." N.C. Gen. Stat. § 14-360(c). The State's theory at trial was that defendant tormented cat C142 by confining and exposing the cat to unsanitary conditions inside defendant's house for a prolonged period. Defendant argues that the "evidence failed to establish that mere exposure to the living conditions constituted torment as defined by § 14-306(c)."

The evidence presented at trial, viewed in the light most favorable to the State, tends to establish that the odor of cat feces and ammonia emanating from defendant's house was strong enough that it could be smelled outside of the property. The smell was so "overwhelming" that the animal control officers were unable to enter the house without the fire department first ventilating the house and giving the officers the breathing apparatus used when going into burning buildings. While the fire department was ventilating defendant's house, neighborhood residents from two blocks away came outside to find out what the smell was.

When the officers were able to enter the residence, there was so much fecal matter and debris on the floor that the front door was difficult to open. The officers observed that all the doors and windows were closed and feces and urine covered "everything"—including all the floors, furniture, and counter tops. Some of the feces were fresh while some were old and had mold on them. The officers, as well as the cats, were unable to walk in the house without stepping in the feces and urine. The officers also observed that cats, covered in their own feces and urine, were leaving streak marks from jumping on the walls, windows, and doors trying to get out of the house. We conclude that this evidence is sufficient to support a conclusion by a reasonable jury that defendant "tormented" cat C142, causing it unjustifiable

pain or suffering, under N.C. Gen. Stat. § 14-360(c). *See People v. Reed*, 121 Cal. App.3d Supp. 26, 31, 176 Cal. Rptr. 98, 101 (Cal. App. Dep't Super. Ct. 1981) (finding sufficient evidence of failure to provide animals with proper care and attention where evidence indicated that when animal regulation officers executed a search warrant on defendant's property, 22 dogs had been found in the garage and almost every room of the house; that the doors and windows in the house were closed; that dog feces had nearly covered the floors; and the dogs had been without food or water). The trial court, therefore, did not err in submitting the cruelty to animals charge to the jury.

## II

**[2]** Defendant's only other argument on appeal is that the trial court committed reversible error in ordering her to pay restitution without sufficient evidence to support the award. The amount of restitution ordered by the trial court must be supported by competent evidence presented at trial or sentencing. *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995). Here, during sentencing, the trial court ordered defendant to pay $259.25 in restitution to Cumberland County Animal Control as that "[wa]s the amount that appear[ed] in the Court file . . . ." Defendant maintains that "[b]ecause no evidence was presented at trial or sentencing regarding the cost or value of anything associated with animal control or otherwise related to the case, the restitution order was wholly unsupported."

The State contends, however, that defendant waived appellate review of this issue by failing to object to the order of restitution in the trial court. Contrary to the State's contention, this Court has consistently held that pursuant to N.C. Gen. Stat. § 15A-1446(d)(18) (2007) a defendant's failure to specifically object to the trial court's entry of an award of restitution does not preclude appellate review. *See State v. Shelton*, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004) ("While defendant did not specifically object to the trial court's entry of an award of restitution, this issue is deemed preserved for appellate review under N.C. Gen. Stat. § 15A-1446(d)(18)); *State v. Reynolds*, 161 N.C. App. 144, 149, 587 S.E.2d 456, 460 (2003) ("We review this assignment of error under N.C. Gen. Stat. § 15A1446(d)(18) which allows for review of sentencing errors where there was no objection at trial.").

The State further objects to review of the restitution award, arguing that defendant stipulated to the restitution award by remaining silent when the trial court explained to her that it was ordering her to

pay $259.25 in restitution. "While it is true that '[s]ilence, under some circumstances, may be deemed assent,' a stipulation's terms must nevertheless 'be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them." *State v. Replogle*, 181 N.C. App. 579, 584, 640 S.E.2d 757, 761 (2007) (quoting *State v. Alexander*, 359 N.C. 824, 828, 616 S.E.2d 914, 917 (2005)). Under the facts of this case, defendant's silence while the trial court orally entered judgment against her does not constitute a stipulation to amount of restitution. *See id.* (rejecting State's argument that "defendant's silence at trial bars his appeal of the issue" of restitution).

The State argues alternatively that even if defendant's challenge to the restitution order is preserved and defendant did not stipulate to the award, there is nonetheless sufficient evidence in the record to support the trial court's order. The State points to the superior court's reviewing the restitution worksheet submitted to the district court and contained in the superior court's file, arguing that "[t]his was analogous to the State resubmitting the restitution worksheet to the trial court . . . ." This Court has held, however, that a restitution worksheet, unsupported by testimony or documentation, is insufficient to support an order of restitution. *See State v. Swann*, —— N.C. App. ——, ——, 676 S.E.2d 654, 657-58 (2009) (vacating restitution award where "victim did not testify and [restitution] worksheet was not supported by any documentation"); *State v. Calvino*, 179 N.C. App. 219, 223, 632 S.E.2d 839, 843 (2006) ("Here, at the sentencing hearing, the prosecutor noted that the State had a 'restitution sheet' requesting reimbursement from defendant of $600 for SBI 'lab work,' and $100 to the 'Dare County Sheriff's Office Special Funds.' However, defendant did not stipulate to these amounts and no evidence was introduced at trial or at sentencing in support of the calculation of these amounts. We vacate the restitution order and remand for a hearing on the matter at resentencing."). As no evidence was presented at trial or sentencing supporting the restitution worksheet, the trial court erred in ordering defendant to pay $259.25 in restitution. We, therefore, vacate the trial court's restitution order and remand for rehearing on the issue.

No error in part; vacated and remanded in part.

Judges BRYANT and JACKSON concur.