STATE OF NORTH CAROLINA v. GINA NICHELE SMITH

No. COA10-504

(Filed 15 March 2011)

### 1. Appeal and Error— preservation of issues—imposition of restitution—no objection required

Defendant did not fail to preserve for appellate review the issue of whether the State failed to present evidence to support the amounts of restitution ordered in an assault with a deadly weapon inflicting serious injury case. No objection was required to preserve for appellate review issues concerning the imposition of restitution.

### 2. Damages and Remedies— restitution—amount ordered unsupported by evidence—plain error

The trial court committed plain error in an assault with a deadly weapon inflicting serious injury case by ordering defendant to pay restitution because the State failed to present evidence to support the amounts of restitution ordered.

### 3. Probation and Parole— period based on improper factors—restitution

The trial court erred in an assault with a deadly weapon inflicting serious injury case by basing its decision to impose a longer period of probation than necessary upon consideration of the restitution to be paid and nature of the offense.

### 4. Assault— deadly weapon inflicting serious injury—peremptory instruction—serious injury—no error

The trial court did not commit error or plain error in an assault with a deadly weapon inflicting serious injury case by giving a peremptory instruction to the jury that multiple gunshot wounds in the upper body constituted a serious injury. The victim required emergency surgery, was left with scars on his chest, shoulder, back, and neck, and testified that a bullet remained in his neck and that it caused him continuing pain.

### 5. Assault— deadly weapon inflicting serious injury—lesser-included offense—peremptory instruction—no error

The trial court did not commit plain error in an assault with a deadly weapon inflicting serious injury case by failing to instruct the jury on the lesser-included offense of assault with a deadly

weapon. The trial court's peremptory instruction to the jury that the victim's injuries were serious was correct.

### 6. Constitutional Law— effective assistance of counsel—no different result

Defendant's trial counsel in an assault with a deadly weapon inflicting serious injury case did not provide ineffective assistance of counsel. Even assuming *arguendo* that defendant's counsel made errors at trial, there was no reasonable probability the result of the proceeding would have been different absent the alleged errors.

Appeal by Defendant from judgment entered 16 October 2009 by Judge Ripley E. Rand in Superior Court, Wake County. Heard in the Court of Appeals 26 October 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Alexandra M. Hightower, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for Defendant.*

McGEE, Judge.

Gina Nichele Smith (Defendant) was convicted by a jury of assault with a deadly weapon inflicting serious injury. Based on Defendant's prior record Level I, the trial court sentenced her to twenty-five months to thirty-nine months in prison. The trial court then suspended Defendant's sentence, placing her on forty-eight months of supervised probation.

The State's evidence at trial tended to show that Joe Nunn (Nunn) was driving his mother's car on the night of 20 July 2008. Nunn and a friend were driving around southeast Raleigh at approximately 11:30 p.m., when Nunn saw Defendant sitting in her front yard with two friends. Nunn stopped the car in front of Defendant's house, got out, and approached Defendant and her friends. Defendant told Nunn to leave; there was an altercation, and Nunn pushed Defendant to the ground. Defendant got up off the ground and went into her house. Nunn then left Defendant's house and dropped his friend off a few streets away. When he dropped off his friend, he remained to talk to a man called Lawrence. As they talked, Nunn remained in the car and Lawrence stood outside the car. Nunn heard gunshots behind him. However, he did not pay too much attention to the gunshots because the music playing in the car was loud. Then Lawrence said, "oh, s——"

and ran off. At that point, Nunn looked around and saw Defendant shooting at him from close range. Nunn was shot three times in his side and neck. Nunn apparently realized he had been shot, but because he had been drinking alcohol and smoking marijuana, his wounds did not hurt initially. Nunn drove off and returned to his mother's house, where he lived. Nunn testified about being shot:

> So when I [drove] off, I was like, damn, I'm f------ shot. When it didn't hurt, I'm thinking I'm about to die, you know what I'm saying, I don't know what's going on. So I get home, and I lay on the couch. I just lay there like five, ten minutes. I'm like damn. I got wheezy. I'm like, let me call my mom.

Nunn called his mother who was upstairs and she drove him to the hospital where he had emergency surgery. However, one bullet remained lodged in his neck. Nunn was released the next day. He testified that he was given pain medication at the hospital, but that he was not really in pain that night after the surgery. Nunn also testified that his neck still hurt where the bullet lodged. He showed the jury the scars on his neck and torso.

Detective Sean Hoolan (Detective Hoolan) of the Raleigh Police Department testified that he investigated the shooting and questioned Defendant while Nunn was in surgery because Nunn had made comments implicating Defendant. Detective Hoolan visited Nunn in the hospital the morning after the shooting. Detective Hoolan testified, without objection, that Nunn told him he had known Defendant for a long time, and that Nunn was certain it was Defendant who had shot him. Detective Hoolan said he interviewed others that day, including Alantrics Loftin (Loftin), whose recitation of events involving the actual shooting mostly corroborated Nunn's. Loftin stated she saw Defendant "get out of the car and pull a long silver gun from the center of her waist." [Tp 104] Loftin described the gun as longer in the barrel than the gun Detective Hoolan was carrying when he questioned her. Loftin said that "she heard [Defendant] say, [']M------------, I told you I'd shoot the s--- out of you,['] and [Defendant] fired three times when [Defendant] was next to [Nunn]." Loftin told Detective Hoolan she was "a hundred percent" certain it was Defendant who shot Nunn, as Loftin knew Defendant from high school.

Detective Hoolan also interviewed Rhonda Debnam (Debnam), who stated that she saw the shooting. Debnam said the gun used was "two or three inches longer than [Detective Hoolan's], and she thought it was silver." Debnam "remembered hearing . . . [']Naw,

m------------------, do something now, m----------------,['] and [the woman] shot three times." Debnam did not know the shooter, but she gave Detective Hoolan a description that matched Defendant.

At trial, Loftin testified that she saw Defendant drive up to the car Nunn was in, jump out, and shoot Nunn three times. However, Debnam, in her testimony, gave a different account of events that night, stating she never witnessed a shooting. When asked if she remembered the contradictory statement she gave to Detective Hoolan, Debnam testified that she did not remember telling Detective Hoolan those things.

The jury was instructed on assault with a deadly weapon with intent to kill inflicting serious injury and the lesser-included offense of assault with a deadly weapon inflicting serious injury. The jury returned a verdict of guilty on the lesser offense. Defendant was sentenced to a presumptive range of twenty-five to thirty-nine months in prison, suspended, and an intermediate level sentence was entered. Pursuant to the intermediate sentence, Defendant was ordered to pay $3,422.00 in restitution and $2,550.00 in attorney's fees, and was given a suspended sentence of forty-eight months of supervised probation, including an active term of six months with recommended immediate work release. Defendant appeals. Additional relevant facts will be discussed in the body of the opinion.

I.

Defendant contends in her first argument that the trial court committed plain error in ordering her to pay restitution because the State failed to present evidence to support the amounts of restitution ordered. We agree.

**[1]** We first address the State's argument that this issue was not preserved for appellate review. The State cites *State v. Canady*, 153 N.C. App. 455, 570 S.E.2d 262 (2002), which states:

> However, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[.]" N.C.R. App. P. 10(b)(1). Where a defendant fails to object to the judgment or the amount of restitution ordered at the sentencing hearing or to a trial court's order that a defendant make restitution, an appeal concerning the appropriateness of an imposition of restitution is not properly before this Court. *State v. Hughes*, 136 N.C. App. 92,

97-98, 524 S.E.2d 63, 66 (1999), *disc. review denied*, 351 N.C. 644, 543 S.E.2d 878 (2000).

*Id.* at 460, 570 S.E.2d at 266, *see also State v. Best*, 196 N.C. App. 220, 232, 674 S.E.2d 467, 476 (2009). The State also states that contrary authority has been published by this Court.

At the sentencing hearing, defendant failed to object to the order of restitution. However, it is well established that a restitution order may be reviewed on appeal despite no objection to its entry. *State v. Shelton*, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004); *see also* N.C. Gen. Stat. § 15A-1446(d)(18) (2009).

*State v. Davis*, — N.C. App. —, —, 696 S.E.2d 917, 921 (2010).

Our Supreme Court recently resolved this issue, stating that N.C. Gen. Stat. § 15A-1446(d)(18) (2009), relied upon by *Davis*, is not in conflict with N.C.R. App. P. 10(a)(1), and therefore no objection is required to preserve for appellate review issues concerning the imposition of restitution. *State v. Mumford*, 364 N.C. 394, 402-03, 699 S.E.2d 911, 917 (2010).[1] We therefore address Defendant's argument.

[2] "[T]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing." *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995) (citation omitted). Unsworn statements made by the State are insufficient to support a restitution amount. *Id.* at 727, 459 S.E.2d at 196 (citation omitted). "This Court has held . . . that a restitution worksheet, unsupported by testimony or documentation, is insufficient to support an order of restitution." *State v. Mauer*, — N.C. App. —, —, 688 S.E.2d 774, 778 (2010) (citation omitted).

We first address the trial court's order requiring Defendant to pay $385.00 in restitution for fees related to her house arrest. After the trial court had pronounced its sentence ordering Defendant to pay restitution for hospital bills in the amount of $3,037.00, plus $2,550.00 in court appointed attorney's fees, the State interjected the following:

[THE STATE]: Judge, one thing. A representative from house arrest is here. Apparently there was $385.00 in house arrest fees, and I can add that information to the restitution work sheet.

---

1. We note that our Supreme Court did not reference any Court of Appeals cases in *Mumford,* or acknowledge the split in authority in our Court. The holding in *Mumford,* however, makes clear that the *Davis* line of cases applies the correct law on this issue. *Mumford* appears to have overruled the *Canady* line of cases, though *Mumford* does not expressly do so.

THE COURT: With respect to the money owed for $385.00 [house arrest] fees, it is also ordered.

This was the first time the State had brought up the issue of house arrest fees and was the sole pronouncement from the State on the matter. Though there was apparently a representative at the sentencing hearing who could have presented some evidence in support of the amount of $385.00 for house arrest fees, the State did not call that person as a witness. The State presented nothing beyond its own unsworn statement to support this amount. We therefore vacate the trial court's order of $385.00 in house arrest fees and remand for rehearing on the issue. *Mauer*, —— N.C. App. at ——, 688 S.E.2d at 778.

We next address Defendant's argument that the State failed to present sufficient evidence in support of the award of $3,037.00 in restitution for Nunn's hospital expenses. At the sentencing hearing, the State made the following statement: "There are some substantial medical bills in the case. The only amount we have, we have from Mr. [N]unn's confirmation was around $3,000 when we talked to him about it yesterday." The State then presented the restitution worksheet and indicated that further information concerning the medical bills could be obtained from Nunn or the hospital. The worksheet provided the addresses for both Nunn and the hospital. The trial court asked Defendant's attorney if he wanted to ask Defendant "about the amount of the restitution being $3,037[,]" to which Defendant's attorney answered: "NO." The State indicated that "[f]rom a review of the medical records and my experience I would ... imagine that the actual amount of money that [Nunn] or Wake Med is out for his treatment is substantially more than that. I would venture a guess in the probably $20,000 range, but I don't have documentation."

Nunn was not at the sentencing hearing and did not testify concerning the amount of his hospital bills. As far as we can tell from the record, no documentation concerning the amount of Nunn's hospital bills was entered into evidence, and all the trial court had to rely on in coming up with the $3,037.00 amount was the unsworn testimony of the prosecutor and the restitution worksheet prepared by the State. Neither of these is competent evidence to support the award of restitution in the amount of $3,037.00. *Wilson*, 340 N.C. at 727, 459 S.E.2d at 196; *Mauer*, —— N.C. App. at ——, 688 S.E.2d at 778. We do not consider Defendant's silence or lack of objection to the restitution amount to constitute a "definite and certain" stipulation as required

by North Carolina law. *Mumford*, 364 N.C. at 403, 699 S.E.2d at 917 ("Issues at a sentencing hearing may be established by stipulation of counsel if that stipulation is 'definite and certain.' ") (citations and quotation marks omitted). We therefore vacate the trial court's order of $3,037.00 in restitution for hospital expenses and remand for rehearing on the issue. *Mauer*, —— N.C. App. at ——, 688 S.E.2d at 778.

## II.

[3] In Defendant's second argument she contends that the trial court erred in basing its decision to impose a longer period of probation than necessary upon consideration of improper factors. We agree.

Defendant argues that the trial court erred in requiring forty-eight months of supervised probation pursuant to N.C. Gen. Stat. 15A-1343.2(d) (2009) based upon the restitution to be paid and nature of the offense. Defendant first argues that the trial court's "consideration of the amount of restitution . . . was improper because . . . the State presented no evidence to support [the amount of] restitution[.]" Having determined that the State failed to present sufficient evidence in support of the amounts of restitution ordered for house arrest fees and hospital expenses, we must remand on this issue as well. The trial court shall reconsider the length of Defendant's probationary period in light of new evidence concerning the amount of restitution, if any, presented on rehearing.

## III.

[4] Defendant contends that the trial court committed plain error "when it peremptorily instructed the jury that 'multiple gunshot wounds in the upper body would constitute a serious injury.' " We disagree.

We will find plain error only

"in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can fairly be said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

*State v. Murray,* 310 N.C. 541, 546, 313 S.E.2d 523, 527-28 (1984) (citations omitted), *overruled on other grounds by State v. White,* 322 N.C. 506, 369 S.E.2d 813 (1988).

> A trial court may peremptorily instruct the jury on the serious injury element if "the evidence 'is not conflicting and is such that reasonable minds could not differ as to the serious nature of the injuries inflicted.' " In *Hedgepeth,* the victim was shot through the ear, causing a wound requiring six or seven stitches to close. She bled profusely, suffered a bruise and burns, and required emergency medical treatment. At the time of trial, she still suffered a ringing in her ear. This Court determined, based on that evidence, that "reasonable minds could not differ as to the seriousness" of the physical injuries.
>
> In this case, evidence showed that the bullet entered Woodbury's leg from the side into the top part of his calf and exited out of the bottom of the calf muscle. His leg went numb and then began burning and throbbing. Woodbury needed assistance to leave the building and was taken to the hospital for treatment. Based on this evidence, we decline to disturb the trial court's determination that Woodbury's injury was "serious" within the meaning of N.C. Gen. Stat. § 14-32(a) and that reasonable minds could not differ as to the seriousness of his injuries. Thus, the trial court was not required to submit the lesser-included offense of assault with a deadly weapon to the jury.

*State v. Crisp,* 126 N.C. App. 30, 37, 483 S.E.2d 462, 466-67 (1997) (internal citations omitted).

In the present case, Nunn required emergency surgery, was left with scars on his chest, shoulder, back and neck, and testified that a bullet remained in his neck and that it caused him continuing pain. We hold it was not error, and certainly not plain error, for the trial court to peremptorily instruct the jury that the three gunshot wounds Nunn received to his neck and torso constituted a serious injury as contemplated by N.C. Gen. Stat. § 14-32 (2009). This argument is without merit.

IV.

[5] Defendant also contends the trial court committed plain error when it failed to instruct the jury on the lesser-included offense of assault with a deadly weapon. We disagree.

Defendant contends that the trial court should have instructed on the lesser-included offense, even though Defendant never requested the instruction, because "the evidence supported a finding that [Nunn's] injuries were not serious. Having already held that the trial court did not err in peremptorily instructing the jury that Nunn's injuries were serious, we further hold that the trial court did not err, much less commit plain error, in failing *sua sponte* to instruct the jury on the lesser-included offense of assault with a deadly weapon. *Crisp*, 126 N.C. App. at 37, 483 S.E.2d at 466-67. This argument is without merit.

V.

**[6]** In Defendant's final argument, she contends her trial counsel provided her ineffective assistance of counsel. We disagree.

"[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985). We have thoroughly reviewed the record, and even assuming *arguendo* that Defendant's counsel made errors at trial, there is no reasonable probability the result of the proceeding would have been different absent the alleged errors. *Id.* We do not factor into our analysis any potential errors related to Defendant's arguments concerning restitution, as we have granted Defendant a rehearing on those issues. This argument is without merit.

No error in part, vacated and remanded in part.

Judges HUNTER, JR. and BEASLEY concur.