An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-957

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

STATE OF NORTH CAROLINA

v.                                    Washington County
                                      No. 11 CRS 50589
WALTER THOMAS PHELPS


Appeal by defendant from judgment entered 24 April 2013 by Judge Wayland J. Sermons, Jr. in Washington County Superior Court. Heard in the Court of Appeals 21 January 2014.


*Attorney General Roy Cooper, by Assistant Attorney General Kathleen N. Bolton, for the State.*

*Appellate Defendant Staples Hughes, by Assistant Appellate Defender Emily H. Davis, for defendant.*


ELMORE, Judge.

On 23 April 2013, Walter T. Phelps (defendant) was indicted by a Washington County grand jury. Defendant was tried before Judge Wayland J. Sermons, Jr. in Washington County Superior Court beginning on 22 April 2013. The jury returned a guilty verdict as to the charge of robbery with a dangerous weapon on 23 April 2013. On 24 April 2013, defendant was sentenced to 60-81 months imprisonment and ordered to pay restitution to Annie

Hyman in the amount of $242.91. Defendant gave oral notice of appeal. Defendant now appeals the trial court's admittance of Captain Willie Williams' (Captain Williams) testimony and the award of restitution. After careful review, we find no prejudicial error in part, and remand in part.

## I. Background

On 22 November 2011, Annie Ruth Hyman (Hyman) was working at the Head Shop salon (Head Shop). Around 7:30 p.m., Hyman was cutting a little boy's hair as patron George Puckett (Puckett) sat in the waiting area, and employee Francis Gilliam (Gilliam) cleaned the restroom. Suddenly, three black men entered the Head Shop wearing hoodies and bandannas that covered their faces. These three men were later identified as defendant, Hesus Basnight (Basnight), and Anthony Seeley (Seeley).

According to the State's evidence, Seeley entered the Head Shop first, followed by defendant and Basnight. Defendant and Basnight, who was wielding a baseball bat, stood near the Head Shop's entrance door. Seeley, machete in hand, immediately approached Hyman and demanded money. Hyman handed Seeley $60 in cash from her station drawer. Seeley grew upset and demanded more. Gilliam heard the commotion and returned from the restroom. Suddenly, Seeley struck Hyman on the head with his

machete, knocking her to the ground. Gilliam screamed. Puckett tried to help Hyman, but Basnight raised his baseball bat and instructed Puckett to sit down. Hyman handed Seeley her purse, which contained credit cards, identification, car keys, and approximately $60.00 to $100.00 in cash. With Hyman's purse and cash in their possession, all three men fled from the Head Shop and into Ms. Rochelle Bowser's (Bowser) car, which was parked at the "basketball court around the corner." Bowser drove Basnight and Seeley to Seeley's house. Basnight testified that he did not know where Bowser took defendant.

Shortly after the robbery, Officer John Sawyer (Officer Sawyer) received a call and started patrolling the area by the Head Shop. Officer Sawyer was alerted that Bowser was possibly involved in the incident. As such, Officer Sawyer took custody of Bowser's vehicle and brought her to the police department for questioning. Bowser named Seeley and Basnight as suspects and directed Officer Sawyer to the Seeley residence located at 102 Linden Street. Both men were taken into custody for questioning. During questioning, Basnight admitted that he, Seeley, and defendant were each involved in the Head Shop robbery.

At trial, the State called Basnight, who again named

defendant and himself as two of the three men who participated in the Head Shop robbery. The State also called Gilliam and Puckett, who partially described defendant as one of the men involved in the Head Shop robbery. Specifically, Gilliam described defendant as a "short, black male with a light complexion." Puckett described defendant as a "little short fellow" who stood near the entrance. Finally, the State called Captain Williams and elicited testimony to the effect that the third robber, unavailable co-defendant Seeley, pled guilty to robbery with a dangerous weapon, and "was sent to the [] Department of Corrections" for the Head Shop robbery. It is the admission of this testimony that is the basis on which defendant now appeals.

Defendant's sole witness at trial was Deborah Walker, who testified that on 22 November 2011, defendant arrived at her home between 5:00 p.m. and 6:00 p.m., played a video game with her son, and left between 9:00 p.m. to 9:30 p.m.

## II. Analysis

Defendant contends that the trial court erred in allowing Captain Williams to testify as to co-defendant Seeley's guilty plea and active incarceration for the Head Shop robbery. We agree.

As defendant failed to object to the contested testimony at trial, we must review this issue for plain error. "[P]lain error review is available in criminal appeals[] for challenges to jury instructions and evidentiary issues[.]" *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., Inc.,* 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (citations omitted). "Our decisions have recognized plain error only in truly exceptional cases when absent the error the jury probably would have reached a different verdict." *Id*. (quotation omitted).

For error to be tantamount to plain error, the defendant must

> demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotations omitted) (alteration in original).

## A. Admitting the Challenged Testimony

Our Supreme Court has recognized the "clear rule" that "neither a conviction, nor a guilty plea, nor a plea of *nolo*

*contendere* by one defendant is competent as evidence of the guilt of a codefendant on the same charges." *State v. Rothwell*, 308 N.C. 782, 785, 303 S.E.2d 798, 800-01 (1983) (citation and quotation omitted). This rule "appl[ies] equally to evidence that [co-defendants] were charged and evidence that they were tried." *State v. Gary*, 78 N.C. App. 29, 37, 337 S.E.2d 70, 76 (1985).

In *Rothwell*, our Supreme Court elucidated:

> The rationale underlying this "clear rule" is twofold. [First,] a defendant's guilt must be determined solely on the basis of the evidence presented against *him*. [Second,] the introduction of such a plea by a co-defendant, *when he or she has not testified at defendant's trial*, would also deprive the defendant of his constitutional right of confrontation and cross-examination.

*Rothwell*, at 785-86, 303 S.E.2d at 801 (citations omitted).

However, "the Supreme Court in *Rothwell* realized that neither of these bases for the rule would be violated if evidence of a *testifying* co-defendant's . . . [guilt] . . . is introduced for a *legitimate* purpose." *State v. Brown*, 67 N.C. App. 223, 232, 313 S.E.2d 183, 190 (1984) (citation and quotation omitted) (alteration in original). In contrast, "if such evidence is introduced for [an] illegitimate purpose—solely as evidence of the guilt of the defendant on trial—it is not

admissible." *Rothwell*, at 786, 303 S.E.2d at 801.

Here, co-defendant Seeley was unavailable for trial and was not a testifying witness. Nonetheless, the State elicited testimony from Captain Williams regarding co-defendant Seeley's guilty plea and active sentence for the same crime charged in defendant's case without offering a legitimate purpose. Captain Williams testified that Seeley pled guilty to robbery with a dangerous weapon——the same crime charged against defendant——and that Seeley was "sent to [the] Department of Corrections." As Seeley did not testify to his own participation in the crime, defendant was not afforded an opportunity to cross-examine him. Because defendant's guilt must be determined solely by the evidence presented against *him* and because Seeley's absence during trial deprived defendant of his constitutional right of confrontation and cross-examination, we conclude that the trial court erred in admitting the challenged testimony. *See, e.g.*, *State v. Lyles*, 172 N.C. App. 323, 330, 615 S.E.2d 890, 895 (2005) (finding error in the trial court's admittance of testimony that unavailable co-defendant was charged with similar offenses as defendant); *see also Gary* at 37-38, 337 S.E.2d at 76 (holding that it was error to admit co-defendant's charges because "[n]o purpose was served by informing the jury that [co-

defendant] had been tried, other than to suggest that he had also been convicted, and by inference that defendant should receive the same treatment").

## B. Prejudicial Error

Having found that the trial court erred, we now turn to the question of whether such error was prejudicial to defendant such that it had a probable impact on the jury's finding of guilt. *See Lawrence, supra.*

Here, defendant contends that the error was prejudicial because the State failed to produce any competent evidence to support his conviction, other than the admission of Captain Williams' testimony regarding the disposition of Seeley's case. Specifically, defendant avers that

> [i]n all probability, the erroneously admitted testimony ultimately pushed the jury into convincting Mr. Phelps based on the preexisting legal determination that his co[-]defendant was guilty of the exact same charge. Without the erroneously admitted guilty plea of a non-testifying co[-]defendant, it is probable the jury would have been unable to convict as the only evidence linking [defendant] to the robbery was the story of a convicted felon with a significant negotiated interest in the outcome of the case.

We are not persuaded. The fact that the jury learned that Seeley pled guilty and was serving an active sentence is not

determinative of the outcome in defendant's case. The State presented sufficient additional evidence to warrant defendant's conviction. At trial, the State proceeded under the theory of acting in concert. Plenary evidence showed that a robbery with a dangerous weapon occurred at the Head Shop. The State's three eye witnesses testified that three men entered the barber shop, one wielding a machete, and demanded money from Ms. Hyman before fleeing together. Additionally, co-defendant Basnight testified that defendant participated in the Head Shop robbery. This testimony corroborated his earlier statements to Captain Williams. Further, Gilliam and Puckett partially described defendant as a "short, black male with a light complexion" and as "little short fellow," respectively.

Defendant has failed to convince us that the challenged testimony had a *probable* impact on the jury's guilty verdict. Disclosing Seeley's guilty plea and conviction resulted in no substantial prejudice to defendant. We note that the State never otherwise alleged that Seeley's guilty plea and conviction was competent evidence of defendant's guilt—the contested testimony was referenced once during Captain Williams' direct examination.

Because we apply plain error cautiously and only in the

exceptional case, we conclude that defendant failed to meet the high burden of proving that the contested testimony had a probable impact on the jury's guilty verdict. *Lawrence*, *supra*. Accordingly, while the admission of the guilty plea of Seeley was error, it does not rise to the level of plain error on these facts.

### III. Restitution Order

Defendant argues, and the State concedes, that the trial court erred in ordering defendant to pay $242.91 in restitution to Hyman, because the restitution amount is not supported by sufficient evidence. We agree.

"[N]o objection is required to preserve for appellate review issues concerning the imposition of restitution." *State v. Smith*, 210 N.C. App. 439, 443, 707 S.E.2d 779, 782 (2011). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation omitted).

Our restitution statute requires that the "amount of restitution must be limited to that supported by the record." N.C. Gen. Stat. § 15A-1340.36 (2013). "A restitution worksheet, unsupported by testimony, documentation, or stipulation, is

insufficient to support an order of restitution." *State v. Blout*, 209 N.C. App. 340, 348, 703 S.E.2d 921, 927 (2011) (quotation omitted). Where some evidence supports an award of restitution, but the evidence is not specific enough to support the exact amount ordered, our Supreme Court has held that the proper course is to remand to the trial court to determine the correct amount of restitution. *See State v. Moore*, 365 N.C. 283, 286, 715 S.E.2d 847, 850-51 (2011) (remanding to the trial court for a new hearing to recalculate the restitution award where there was "some evidence" to support an order of restitution, but the evidence was unable to support the exact amount ordered).

Here, Ms. Hyman testified that defendant stole $60 cash from her station drawer and took her purse, which contained $60-$100 in cash, credit cards, identification cards, and car keys. No evidence was introduced regarding the cost of replacing her stolen goods. Nevertheless, the trial court ordered that "[defendant] shall pay restitution to Annie Hyman in the amount of $242.91," without any further explanation. Because defendant did not stipulate to the restitution amount, and because no evidence was presented at trial or during sentencing to support the exact amount of restitution ordered, the trial court erred

in ordering defendant to pay $242.91. While an award of restitution is supported by the record, the evidence presented did not adequately support the particular amount awarded. Thus, we remand for the trial court to calculate the correct amount of restitution.

### IV. Conclusion

In sum, we conclude that the trial court erred in admitting Captain Williams' testimony regarding co-defendant Seeley's sentence and plea; however, such error did not constitute plain error under Rule 10(b)(2). Accordingly, we find no prejudicial error in defendant's conviction. We conclude that there is insufficient evidence in the record to support the trial court's specific award of restitution. Therefore, we remand to the trial court for a new hearing to determine the appropriate amount of restitution.

No prejudicial error in part; remanded in part.

Judges McGEE and HUNTER, Robert C., concur.

Report per Rule 30(e).